IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In re:                                                      )    Chapter 11
    HOME BUILDING SUPPLY, LLC, an         )    Case No. 09-45136
    Illinois limited liability company,    )    Honorable Jacqueline P. Cox
FEIN: 65-1197369                                            )    Hearing Date: December 3, 2009
                      Debtor.    )    Hearing Time: 9:30 A.M.

## NOTICE OF MOTION

TO:    SEE ATTACHED SERVICE LIST

    PLEASE TAKE NOTICE that the undersigned has filed the attached **EMERGENCY MOTION: (1) FOR ENTRY OF AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND BANKRUPTCY RULES 2002, 4001 AND 9014; AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**, and said motion shall be heard on **December 3, 2009**, at the hour of **9:30 A.M.** before Judge Cox or any judge sitting in her stead in **Courtroom 619** of the U. S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn, Chicago, IL, a copy of which is attached hereto.

                                                              /s/ Deborah K. Ebner
                                                              DEBORAH KANNER EBNER

Deborah K. Ebner (#61816159)
Law Office of Deborah Kanner Ebner
11 East Adams Street
Suite 904
Chicago, Illinois 60603
(312) 922-3838

## CERTIFICATE OF SERVICE

    I, DEBORAH KANNER EBNER, hereby certify that on December 1, 2009, I caused copies of this Notice along with the attached motion to be served either by facsimile transmission, Fed Ex overnight delivery or messenger deliver to the persons listed on the attached Service List and electronically to those registered to receive such notice for this case.

                                                              /s/Deborah K. Ebner

## SERVICE LIST

**BY ECF**
William T. Neary @ USTPRegion11.ES.ECF@usdoj.gov

**BY FACSIMILE TRANSMISSION**
Keevan D. Morgan, Morgan & Bley Ltd, Fax 312-243-0009
Paula K. Jacobi, Barnes & Thornburg LLP, Fax 312-759-5646
Michael P. Loftus, Loftus & Saltzberg PC, Fax 312-663-6406
Aristokraft, Inc., Fax 812-634-2838
Allegiance Community Bank, Fax 708-532-0880
Carstin Brands, Inc., Fax 217-543-3377
Elite Kitchens, Fax 630-898-5572
Granite Planet, Fax 708-354-3505
Labor Ready, Fax 708-679-9712
Norcraft Companies, Fax 651-234-3398
Penske Truck Leasing Co., Fax 610-775-2449
Solid Solutions, Fax 708-460-2967
Sosin Lawler & Arnold LLC, Fax 708-448-8140

**BY FEDERAL EXPRESS OVERNIGHT DELIVERY**
22nd Centry Media, 11516 W 183rd Street, Unit SW, Orland Park, IL 60467
Chicago Home Improvement Mag, 2031 Bryn Mawr, Aurora, IL 60506
Dell Financial Services, Payment Processing Center, Lockbox 5275, 2012 Corporate Lane,
        Naperville, IL 60563
Hartford Casualty Insurance, 1 Hartford Plaza, Hartford, CT 06155
Omega Cabinets, Ltd, 75 Remittance Drive, Suite 3149, Chicago, IL 60675-3149
Precin Company, 6502 Scotch Pine Drive, Tinley Park, IL 60477
Sterling Commerce, 4600 Lakehurst Ct., Dublin, Ohio 43016
WW Wood Products, Inc, 12140 Main Street Dudley, MO 63936

**BY MESSENGER SERVICE**
United Health Care, 135 S LaSalle Street, Dept. 3092, Chicago, IL 60674-3092
Weis Dubrock Doody, 1 N LaSalle Street, Suite 1300, Chicago, IL 60602-3992

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HOME BUILDING SUPPLY, LLC, an | ) | Case No. 09-45136 |
| Illinois limited liability company, | ) | Honorable Jacqueline P. Cox |
| FEIN: 65-1197369 | ) | Hearing Date: December 3, 2009 |
| Debtor. | ) | Hearing Time: 9:30 A.M. |

**EMERGENCY MOTION: (I) FOR ENTRY OF AN INTERIM
ORDER AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION PURSUANT TO
11 U.S.C. §§363 AND BANKRUPTCY RULES 2002, 4001, AND 9014; AND
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

NOW COMES debtor herein ("Movant" or the "Debtor"), upon its Emergency Motion (the "Motion") (I) for the entry of an Interim Order Authorizing Use Of Cash Collateral and Granting Adequate Protection to Pursuant to 11 U.S.C. §§363 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Motion, the Debtor respectfully represents as follows:

## I.    INTRODUCTION[1]

1.    The Debtor seeks authority to use Cash Collateral (hereafter defined) on an interim basis, and to provide adequate protection to the secured parties, until a final hearing on the Motion can be held[2]. As explained below, the Debtor's Chapter 11 case was filed November 29, 2009 and an immediate need exists now to use Cash Collateral which necessitates the filing of this Motion on an emergency basis. Without such funds, the Debtor will not be able to pay for wages, related payroll taxes, insurance, utilities, inventory, and other basic operating expenses pending a final hearing as hereinafter set forth, and it will suffer immediate and irreparable harm

---

[1] All capitalized terms used herein and not otherwise defined herein shall be ascribed their meaning and definition as set forth in the proposed Interim Order attached hereto as Exhibit E.

[2] Attached hereto as Exhibits B and C, respectively, is a report from the Illinois Secretary of State regarding UCC filings against Debtor, Home Building Supply, LLC which displays only August 24, 2009 filings by affiliate *Rymsza Properties, LLC*, and *Carol Rymsza*, individually, also attached therein. Although the Precin Company may assert a

3

if the relief requested herein is not granted.

A. **The Bankruptcy Case.**

2. On November 29, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Code) and from and after the Petition Date, has been operating its business and managing its properties as Debtor and Debtor-in-possession ("Case").

3. No trustee or unsecured creditors' committee (the "Committee") has been appointed in the Case.

4. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein are § 363 of the Code and Rule 4001 of the Bankruptcy Rules.

B. **The History of the Business of the Debtor**

5. On August 28, 2003, Debtor (f/k/a Rymsza Home Building Supply, LLC), purchased all of the machinery and equipment, furniture and fixtures, intangibles, name, inventory, accounts receivable, customer deposits, cash, securities, CD's, prepaid expenses and goodwill (the assets) from Home Building Supply Corporation, an Illinois corporation ("Seller"), then solely owned by Clarence Precin[3]. The purchase price for the assets was $800,000.00. A promissory note (the "Purchase Note") which came due 60 months after the closing of the transaction was secured by a security agreement in substantially all of the assets of the Debtor, and the personal guarantees of John S. Rymsza and Carol L. Rymsza.

6. A material term of the sales contract between the parties was the execution of an

---

perfected security interest, there was no UCC filing identified in a corporate search of Home Building Supply, LLC.
[3] At the time of purchase, Debtor was owned by John Rymsza, now deceased, and his wife Carol Rymsza.

4

employment agreement pursuant to which the Debtor was obligated to pay Clarence Precin $25,000.00 annually for services.

7. In addition to the foregoing, the sale was expressly conditioned upon a sale of the commercial real estate, located at 17532 Duvan Lane, Tinley Park, Illinois, out of which Seller had operated the business. Clarence Precin entered into a contract for $800,000.00 for the sale of the real estate with Rymsza Properties, LLC, the latter of which was created for the purpose of acquiring title to the real estate.

8. The asset purchase and the real estate sale closed on August 28, 2003. Thereafter, on August 29, 2003, Debtor changed its name to Home Building Supply, LLC (a copy of the name change is attached hereto as **Exhibit A**) and commenced using that name exclusively[4]. Clarence Precin commenced his employment with Home Building Supply, LLC promptly after closing.

9. In 2006, the collapse of the real estate market and subsequent freeze in the credit markets began to impact Debtor's operations. Debtor, a building supply entity, began to experience a diminution in its sales, and increased difficulty in collecting its receivables. When the Seller's note became due in August 2008, the Debtor was not able to satisfy its indebtedness to Seller through its business operations.

10. On December 29, 2008, Seller filed suit against Debtor, and Principal Carol Rymsza. That case, captioned *Precin Company v. Rymsza Home Building Supply, LLC and Carol Rymsza* is currently pending in the Circuit Court of Cook County, Illinois as Case Number. 08 L 14238.

11. On June 12, 2009, in an effort to satisfy Debtor's obligations to Seller, Carol

---

[4] The name "Home Building Supply" was a purchased asset, and, it was always contemplated by the Buyer that such name was to be used after closing.

Rymsza, managing member of Rymsza Properties LLC ("Properties") mortgaged the commercial real estate in an effort to obtain funds with which to satisfy the Seller and with which to fund continuing operations of the Debtor. Because the value of the underlying property had decreased by June 12, 2009, the mortgage lenders required not only a security interest in the Properties' real property but also additional collateral from Carol Rymsza ("Carol") personally.

12. Notwithstanding these efforts the Debtor, Properties and Carol were unsuccessful in settling the lawsuit with Precin, and accordingly, this Chapter 11 filing became necessary.

C. **Pre-petition Lending**

13. Pre-petition, Properties utilized its mortgage proceeds to fund operations of Debtor. Carol also contributed funds to the business to sustain business operations. Prior to the summer of 2009, both Properties and Carol loaned money to the Debtor on an unsecured basis.

14. During the summer of 2009, Carol and Properties advanced additional funds on a secured basis to fund continued operations of the Debtor. The Debtor executed and delivered a note to Carol (the "Carol Note") and executed and delivered a security agreement to Carol. In addition the Debtor executed and delivered a note to Properties (the "Properties Note") and executed and delivered a security agreement to Properties.

15. The Properties Note is secured by a security interest in substantially all assets of the Debtor. The Carol Note is secured by a security interest in substantially all of the Debtor's property. The indebtedness owed to Properties and to Carol is referred to as "Lender Indebtedness."

16. As stated, the Lender Indebtedness is secured by a lien and security interest in and to substantially all of the Debtor's assets and all products and proceeds thereof pursuant to, *inter alia*, the filing of: (i) two financing statements Form UCC-1 filed with the Office of the

Secretary of State of Illinois on August 24, 2009. Those UCC statements are attached as **Exhibits B and C** (collectively the "Pre-Petition Liens[5]").

### D.   Need for Use of Cash Collateral

17.   The Debtor's objective in the Case is to restructure its debt either through a sale of its assets pursuant to 11 U.S.C. § 363, or through the plan confirmation process. At present Debtor's books and records indicate that it has approximately $178,716.18 in inventory, $172,070.86 in accounts receivable and $10,414.04 in cash.

18.   The Debtor intends to move quickly to either consummate a sale or restructure its business. However, no sale can be consummated until after the holiday season and after sufficient time to adequately market the Debtor's assets. The Debtor is mindful of the cost of ongoing administrative costs and has proposed a budget which contemplates the use of cash collateral and the additional use of debtor in possession financing which will be sought in a separate pleading.

19.   The Debtor further believes that its best option is to maximize the value of its assets and preserve value for the estate to maintain the going concern value of the business. In today's economic environment, the Debtor does not believe it will be able to obtain the necessary long-term funding needed to support an internal plan of reorganization. The Debtor also believes that if it was required to initiate a Chapter 7 case in lieu of the instant Case, the inventory would likely be sold in bulk for far less than it could be sold in a well advertised 363 sale of an ongoing business operation, thereby eliminating any potential return for unsecured creditors.

---

[5] A UCC search of Home Building Supply, LLC revealed only exhibits B and C. Although the Precin Company may assert a perfected security interest in the assets of the Debtor, there is no supporting UCC of record. (On September 2, 2003, the Precin Company did file a UCC-1 against Debtor *Rymsza Home Building, LLC* and filed a second UCC-1 against *Rymsza Home Building, LLC* on June 17, 2009, its initial one having lapsed.) Debtor, as contemplated in the Asset Purchase Agreement, changed its name to Home Building Supply, LLC on August 29, 2003, against which Precin never filed a UCC.

## II.   RELIEF REQUESTED

### A.   Interim Order for Use of Cash Collateral

20.   As stated, it is the primary objective of the Debtor at the present time to continue to operate its business, with the ultimate goal of maximizing the assets of the estate for the benefit of its creditors. To accomplish this objective, the Debtor must be permitted to use its cash collateral, as defined in Section 363(a) of the Code (the "Cash Collateral").

21.   An immediate need exists for the Debtor to use its Cash Collateral in order to continue the operation of the Debtor's business. Without such funds, the Debtor will not be able to pay for wages, related payroll taxes, insurance, utilities, inventory and other basic operating expenses pending further hearings as hereinafter set forth.[6]

22.   Attached hereto as **Exhibit D** and made a part hereof is a budget of cash receipts, sales, and expenses to be incurred or paid, for the period commencing as of the Petition Date and continuing through and including March 30, 2010 (the "Budget").

23.   Section 363(c)(2) of the Code prohibits the Debtor to use Cash Collateral without the Consent of the Lenders or Order of this Court.

24.   The Debtor and the Lenders continue to negotiate the terms of an Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection in the current form of that which is attached hereto as **Exhibit E** and by express reference made a part hereof (the "Interim Order"). Even though the Lenders are related to the Debtor, each party is separately represented and negotiations are in good faith. The Debtor anticipates that a final draft of the Interim Order will either be filed with the Court prior to the hearing on this Motion or submitted to the Court at the hearing on this Motion.

---

[6] Debtor is ceasing to fund its rent obligation. As a result of which related *Rymsza Properties, LLC* ("Properties") will satisfy its indebtedness on its mortgage obligations. Properties has agreed, however, to waive its claim for rent

8

25. The Debtor contends that good cause exists for the entry of the Interim Order authorizing the use of Cash Collateral, pursuant to the Budget. Among other things, entry of an order authorizing use of Cash Collateral will: (i) minimize disputes and potential contested litigation over the use of Cash Collateral; (ii) avoid disruption of the Debtor's business; and (iii) permit the Debtor to meet payroll and other operating expenses necessary in order to maximize the value of the assets of this estate.

26. The Debtor does not believe that it will be able to pay all of its ongoing expenses on a post petition basis without debtor in possession financing in the very near future. The Debtor expects to file a motion seeking to incur debtor in possession financing which motion will be noticed for a date next week. The Debtor is able to pay all of its current obligations through December 5, 2009 if this Court enters an Order authorizing the use of cash collateral this week.

27. If the Debtor's access to Cash Collateral were to be abruptly discontinued, its operations would be severely disrupted, it would be unable to pay operating expenses and unable to operate its business in an orderly manner, thereby severely impairing the value of its assets. Accordingly, the Debtor and its estate will suffer immediate and irreparable harm unless the Debtor is immediately authorized to use its Cash Collateral on an interim basis.

28. By this Motion, the Debtor requests the entry of the Interim Order which is still being negotiated with the Lenders, which authorizes the Debtor's use of Cash Collateral pursuant to the Budget through to the date of the "Final Hearing," as hereinafter defined.

**B.   Key Provisions in the Interim Order as Required Under Local Rule 4001**

29. The principal features of the Interim Order as may be required to be disclosed under Local Rule 4001 can be described as follows:

---

in this Chapter 11 case.

9

a) The Interim Order does provide that any Committee appointed in this Case shall have 45 days after the Petition Date to conduct any review and investigation of the Pre-Petition Liens.

b) The Interim Order provides for a carve-out from the Lender's liens and interests granted in the Interim Order in the post-petition Collateral for: (a) counsel retained by the Debtor in an amount not to exceed $30,000, provided however, in the event that a Committee is appointed, then such $30,000 carve-out shall be allocated between counsel for the Debtor in an amount not to exceed $20,000 and counsel for the Committee in an amount not to exceed $10,000, as more fully detailed in the Interim Order and (b) quarterly fees payable by the Debtor pursuant to 28 U.S.C. §1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court during the Case.

c) The Interim Order provides that the automatic stay is modified solely to the extent necessary to permit the Lenders to file or record any financing statements or other instruments and documents, if any, evidencing its Replacement Liens granted under the Interim Order in the Replacement Collateral.

d) Subject to the terms of the Interim Order, the Debtor shall have authority to use Cash Collateral in amounts not to exceed 105% of the amounts set forth in each line item expenditure in the Budget that is attached hereto as **Exhibit D**.

e) The Lender is granted as adequate protection for the Debtor's use of Cash Collateral, a post-petition, and continuing and replacement security interest in, and liens against all Cash Collateral, to the same extent and in the same

priority as the Lender's security interests existed on the Petition Date.

### C. Negotiations in Good Faith

30. Although the negotiations of the Interim Order continue between the Lenders and the Debtor, the Debtor is hopeful that by the time of the Final Hearing, it will have reached agreement on the terms of the Interim Order. The Debtor maintains that all negotiations with the Lenders have been conducted in good faith and at arm's length.

### D. Request For Final Hearing

31. The Debtor further requests that the Court set a final hearing (the "Final Hearing") on the Motion pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, to consider the entry of a final order substantially in the form of the Interim Order (the "Final Order").

### E. Notice of the Motion.

32. The Motion was filed on December 1, 2009. On December 1, 2009, the Debtor served the notice of the Motion, a copy of the Motion, and the Interim Order by facsimile transmission and/or Federal Express overnight delivery on (i) the United States Trustee for the Northern District of Illinois, (ii) each of the Debtor's twenty (20) largest unsecured creditors (including the Precin Company and its counsel), and (iii) the Debtor's secured creditors. The Debtor asserts that such notice is appropriate and adequate under the circumstances. Consequently, the Debtor believes that adequate notice and opportunity for a hearing has been given for the approval of the Interim Order on an emergency and limited basis, pursuant with the provisions of Section 363 of the Code, and Rules 2002, 4001 and 9014 of the Bankruptcy Rules, and any other applicable law, and no further notice relating to the entry of the Interim Order is necessary or required.

**WHEREFORE**, the Debtor, Home Building Supply, LLC, an Illinois company,

respectfully requests that the Court authorize the use of Cash Collateral on an interim basis, consistent with the expenses set forth in the Budget, which expenses are necessary to avoid immediate and irreparable harm to the Debtor, and enter the Interim Order substantially in the form of the Order attached and incorporated hereto as **Exhibit E**, and set the Final Hearing to consider approval of the Final Order, and grant such other and further relief as is just and proper, consistent with the terms hereof.

Dated this 1st day of December 2009.

                                        HOME BUILDING SUPPLY, LLC,
                                      An Illinois limited liability company,

                      By:      /s/ Deborah K. Ebner
                            Its Attorney

Deborah K. Ebner (ARDC No. 61816159)
Law Office of Deborah K. Ebner
11 East Adams Street
Suite 904
Chicago, Illinois 60603
(312) 922-3838