IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HOME BUILDING SUPPLY, LLC, an | ) | Case No. 09-45136 |
| Illinois limited liability company, | ) | Honorable Jacqueline P. Cox |
| FEIN: 65-1197369 | ) | Hearing Date: December 9, 2009 |
| Debtor. | ) | Hearing Time: 9:30 A.M. |

## NOTICE OF MOTION

TO:    SEE ATTACHED SERVICE LIST

LEASE TAKE NOTICE that the undersigned has filed the attached **MOTION FOR ENTRY OF INTERIM ORDER (I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §364(c); AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**, and said motion shall be heard on **DECEMBER 9, 2009,** at the hour of **9:30 A.M.** before Judge Cox or any judge sitting in her stead in Courtroom 619 of the U. S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn, Chicago, IL, a copy of which is attached hereto.

/s/ Deborah K. Ebner
DEBORAH KANNER EBNER

Deborah K. Ebner (ARDC No. 61816159)
Law Office of Deborah Kanner Ebner
11 East Adams Street
Suite 904
Chicago, Illinois 60603
(312) 922-3838

## CERTIFICATE OF SERVICE

I, DEBORAH KANNER EBNER, hereby certify that on **December 2, 2009,** I caused copies of this Notice along with the attached motion to be served via First Class Mail to the persons listed on the attached Service List and electronically to those registered to receive such notice for this case.

/s/Deborah K. Ebner

## SERVICE LIST

**BY ECF**
William T. Neary @ USTPRegion11.ES.ECF@usdoj.gov

**BY FIRST CLASS POSTAGE-PREPAID MAIL**
Keevan D. Morgan, Morgan & Bley Ltd, 900 W Jackson Blvd, Suite 4E, Chicago, IL 60607
Paula K. Jacobi, Barnes & Thornburg LLP, One Wacker Drive, Suite 4400, Chicago, IL 60606
Michael P. Loftus, Loftus & Saltzberg PC, 53 W Jackson Blvd, Suite 1515, Chicago, IL 60604
22nd Centry Media, 11516 W 183rd Street, Unit SW, Orland Park, IL 60467
Allegiance Community Bank, 8001 W 83rd Street, Tinley Park, IL 60477
Aristokraft, Inc., 1 Masterbrand Cabinets Drive, Jasper, IN 47546
Caratin Brands, Inc., 520 E 2nd Street, Arthur, IL 61911
Carol Rymsza, 45 Lucas Drive, Palos Hills, IL 60465
Chicago Home Improvement Mag, 2031 Bryn Mawr, Aurora, IL 60506
Davinci Construction, c/o Karen C. Yotis, 1904 Brookdale #156, Naperville, IL 60563
Dell Financial Services, Payment Processing Center, Lockbox 5275, 2012 Corporate Ln,
      Naperville, IL 60563
Elite Kitchens, 3331 Hankas Ave, Aurora, IL 60505
Granite Planet, 26 N Beach, La Grange, IL 60525
Hartford Casualty Insurance, 1 Hartford Plaza, Hartford, CT 06104
Labor Ready, 1002 Solutions Center, Chicago, IL 60677
Michael J. Harney, Edelman Combs, et al, 120 S LaSalle St, 18th Floor, Chicago, IL 60603
Norcraft Companies, 3020 Denmark Avenue, Suite 100, Minneapolis, MN 55465
Omega Cabinets, Ltd, 75 Remittance Drive, Suite 3149, Chicago, IL 60675-3149
Penske Truck Leasing Co., LP, Route 10 Green Hills, Reading, PA 19603
Precin Company, 6502 Scotch Pine Drive, Tinley Park, IL 60477
Rymsza Properties, LLC, c/o 45 Lucas Drive, Palos Hills, IL 60465
Schaaf Window Co, Inc, c/o Hoogendoorn & Talbot, LLP, 122 S Michigan #1220, Chicago, IL 60603
Solid Solutions, 9632 W. 143rd, Orland Park, IL 60462
Sosin Lawler & Arnold LLC, 11800 S 75th Ave, Suite 300, Palos Heights, IL 60463
Sterling Commerce, 4600 Lakehurst Ct, Chicago, IL 60673
United Health Care, 135 S LaSalle Street, Dept. 3092, Chicago, IL 60674-3092
WW Wood Products, Inc, 12140 Main Street, Dudley, MO 63936
Weis Dubrock Doody, 1 N LaSalle Street, Suite 1300, Chicago, IL 60602-3992

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTER DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HOME BUILDING SUPPLY, LLC, an | ) | Case No. 09-45136 |
| Illinois limited liability company | ) | Honorable Jacqueline P. Cox |
| FEIN: 65-1197369 | ) | Hearing Date: December 9, 2009 |
| Debtor. | ) | Hearing Time: 9:30 AM |

**MOTION FOR ENTRY OF INTERIM ORDER (I) AUTHORIZING
SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §364(c); AND
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

TO: THE HONORABLE JACQUELINE P. COX
U. S. BANKRUPTCY JUDGE,

NOW COMES HOME BUILDING SUPPLY, LLC, an Illinois limited liability company, debtor and Debtor-in-possession herein ("Debtor"), and requests the entry of an interim financing order pursuant to Section 364(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. §364(c); and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c). In support of the Motion, the Debtor respectfully represents as follows:[1]

I.  **CASE FILING AND JURISDICTION:**

1. On November 29, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 (the "Chapter 11 Case") of the Bankruptcy Code.

2. No committee of unsecured creditors has been formed in the Chapter 11 Case.

3. The Debtor has continued to manage its affairs and operate its business as a debtor-in-possession under the supervision of this Court pursuant to Sections 1107 and 1108 of

---

[1] All capitalized terms used herein and not otherwise defined herein, if any, shall be ascribed their meaning and definition as set forth in the proposed Interim Financing Order.

the Bankruptcy Code.

4.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

5.  The applicable statute involved is Section 364 of the Bankruptcy Code and the applicable rules are Rules 2002, 4001, and 9014 of the Bankruptcy Rules.

## II.  BRIEF DESCRIPTION OF DEBTOR

6.  On August 28, 2003, Debtor (f/k/a Rymsza Home Building Supply, LLC), purchased all of the machinery and equipment, furniture and fixtures, intangibles, name, inventory, accounts receivable, customer deposits, cash, securities, CD's, prepaid expenses and goodwill (the assets) from Home Building Supply Corporation, an Illinois corporation ("Seller"), then solely owned by Clarence Precin.[2] The purchase price for the assets was $800,000.00. A promissory note (the notes) which came due 60 months after the closing of the transaction was secured by a security agreement, and the personal guarantees of John S. Rymsza and Carol L. Rymsza.

7.  A material term of the sales contract between the parties was the execution of an employment agreement pursuant to which the Debtor was obligated to pay Clarence Precin $25,000.00 annually for services.

8.  In addition to the foregoing, the sale was expressly conditioned upon a sale of the commercial real estate, located at 17532 Duvan Lane, Tinley Park, Illinois, in which Seller had operated the business. Clarence Precin entered into a contract for $800,000.00 for the sale of the real estate with Rymsza Properties, LLC, the latter of which was created for the purpose of acquiring title to the real estate.

---

[2] At the time of purchase, Debtor was owned by John Rymsza, now deceased, and his wife Carol Rymsza.

9. The asset purchase and the real estate sale closed on August 28, 2003. Thereafter, on August 29, 2003, Debtor changed its name to Home Building Supply, LLC.

10. In 2006, the collapse of the real estate market and subsequent freeze in the credit markets began to impact Debtor's operations. Debtor, a building supply entity, began to experience a diminution in its sales, and increased difficulty in collecting its receivables. When the Seller's note became due in August 2008, the current economic crisis was in high gear, and Debtor was not able to satisfy its indebtedness to Seller through its business operations. On December 29, 2008, Seller filed suit against Debtor, and Principal Carol Rymsza. That case, captioned *Precin Company v. Rymsza Home Building Supply, LLC and Carol Rymsza*, pends in the Circuit Court of Cook County, Illinois as Case Number. 08 L 14238.

11. In an effort to satisfy Debtor's obligations to Seller, Carol Rymsza, managing member of *Rymsza Properties, LLC*, mortgaged the commercial real estate in an effort to obtain funds with which to satisfy the Seller and with which to fund continuing operations of the Debtor. Since the real estate values had plummeted by June 12, 2009, the mortgage lender required additional collateral beyond a mortgage on the commercial real estate and accordingly, Carol Rymsza mortgaged her own personal holdings in an effort to settle the lawsuit and obtain additional liquidity for Debtor.

12. Notwithstanding the efforts referenced in paragraph 11, neither Debtor nor Carol Rymsza was successful in settling the lawsuit, and accordingly, this Chapter 11 filing became necessary.

13. Pre-petition *Rymsza Properties, LLC* utilized its mortgage proceeds to fund operations of Debtor.

14. *Rymsza Properties, LLC* is required to continue to service its mortgage debt and is

unable to continue to infuse funding into the Debtor.[3]

15. Debtor has sought DIP funding from institutional lenders but has been unsuccessful.

16. The Debtor's objective in the Chapter 11 is to sell its business by way of either a §363 sale, or, confirmation of a Plan of Reorganization. Even without an obligation to pay rent to *Rymsza Properties, LLC*, it requires interim funding in order to keep the doors open to consummate the sale of an ongoing operation.

### III. RELIEF REQUESTED

17. The need for post-petition funding primarily arises from the Debtor's belief that it may continue to operate as a going concern and maximize recovery for creditors either through a Plan of Reorganization or a §363 sale. Alternatively, should it be determined that a liquidation of the Debtor's inventory is in the best efforts of the Debtor's estate, the Debtor believes that an organized liquidation would be preferable to a mass "fire sale". The Debtor believes that the relief requested herein will allow the Debtor to pursue the first of these two options and avoid a straight liquidation, hence, maximizing returns for creditors.

18. The Debtor has attempted to obtain and therefore does not believe it is capable of obtaining alternative sources of cash or credit in the form of unsecured credit allowable as an administrative expense under § 503(b)(1) of the Code; unsecured credit allowable under §§ 364(a) and (b) of the Code; or secured credit pursuant to § 364(c) of the Bankruptcy Code on terms and conditions more favorable than sought under this Motion. The loan to be made pursuant to the relief requested herein is to be six percent (5%) interest, and for a period of up to about six months.

---

[3] Since *Rymsza Properties, LLC* is uncertain of its ability to collect rent from Debtor with which to pay its mortgage, any funding that it may extend to Debtor may jeopardize its loan status with its mortgage lender, and accordingly any post petition funding to be made available by *Rymsza Properties, LLC* will be extremely limited.

19. If the relief requested herein is disallowed, the Debtor's operations would be severely disrupted, and the Debtor would be forced to liquidate almost immediately. Accordingly, the Debtor and its estate will suffer immediate and irreparable harm unless the Debtor is authorized to obtain credit on terms and conditions set forth in the proposed DIP Financing (as hereafter defined) on an interim basis.

A. **Interim DIP Financing**

20. By this Motion, the Debtor requests the entry of an interim order (the "**Interim Financing Order**") authorizing the Debtor to borrow money on a secured basis (the "**DIP Financing**") from Carol Rymsza, individually (the "**DIP Lender**"), pursuant to such documents as may be reasonably requested by the DIP Lender which are consistent with this Motion and the proposed Interim Financing Order (collectively, the "**DIP Loan Documents**"). The proceeds from the DIP Financing are intended to be used to acquire new inventory, fund payroll, and pay for other ordinary course expenses in connection with the Debtor's business. A one-month budget approved by the DIP Lender has been appended to the Interim Financing Order, a copy of which is attached hereto as **Exhibit A** and incorporated herein.

B. **Negotiations in Good Faith**

21. Although, the DIP Lender is an "insider" pursuant to 11 U.S.C § 101, DIP Lender and the Debtor conducted good faith negotiations, by and through separate counsel, with respect to the terms and conditions of the DIP Financing and the Interim Financing Order. The DIP Lender and the Debtor have tried to keep the terms of the DIP Financing as basic as possible.

C. **Consent to Partial Relief from Stay**

22. The Debtor consents to the Court's modification of the automatic stay pursuant to Section 362 of the Code, to the extent necessary to grant the relief requested herein and for the

purposes set forth in the Interim Financing Order.

### D. Final Hearing

23. The Debtor further requests that the Court set a final hearing on the Motion pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, to consider the entry of the Final Financing Order.

## IV. CERTAIN TERMS OF AND CONDITIONS TO THE DIP FINANCING

### A. Identification of Key Provisions in the Interim Financing Order as Required Under Bankruptcy Rule 4001 and Local Rule 4001-2

24. The principal features of the DIP Financing can be described as follows:

   a. Cross Collateralization Protection: The Debtor seeks to provide a lien on all assets of the Debtor, including avoidance actions, as security for the DIP Financing. Interim Financing Order. Although there is a pre-petition secured loan owing to the DIP Lender, that pre-petition secured loan is *not* sought to be secured by the DIP Financing, and there is no determination or finding relating to any pre-petition loan owing to the DIP Lender, secured or unsecured.[4]

   b. Provisions Binding the Estate: There are no provisions or findings of fact that bind the estate with respect to the validity, perfection and amount of any liens (other than the liens to be granted under the Interim Financing Order for DIP Financing), and there are no waiver of claims by the estate against any party in connection with the DIP Financing.[5]

   c. Avoidance Actions The DIP Lender shall receive a lien on the proceeds of any avoidance actions. Interim Financing Order,

   d. Use of Post-Petition Loans to Pay Pre-Petition Debt: The loan contemplated by the DIP Financing will *not* be used to pay pre-petition debt to the DIP Lender, but will be utilized, upon Court approval to pay certain 503(b)(9) and other priority claims, forthwith.

   e. Provisions Related to Use of Professional Fees: There is a $30,000

---

[4] There is a note, security agreement and UCC financing statement in favor of *Rymsza Properties, LLC* which was filed in August 24, 2009 securing pre-petition debt as well as a note, security agreement and UCC financing statement in favor of the proposed DIP lender (Carol Rymsza). (There are additional obligations to Rymsza Properties, LLC and Carol Rymsza arising prior to August 2009 which remain unsecured claims.).

[5] The Precin Company (Precin) filed two UCC's against *Rymsza Home Building Supply, LLC*. The first UCC was filed September 22, 2003 and the second was filed June 17, 2009. Precin has not, however, filed a UCC against *Home Building Supply, LLC.*

carve out for the Debtor's Court approved professionals, subject to reduction in the event a Committee is formed. The carve-out cannot be used to prosecute claims against the DIP Lender, but there is no restriction on investigating such claims. Interim Financing Order.

 f. <u>Priming Liens:</u> An issue pertaining to the priority of liens may arise with respect to the DIP Lender, the DIP lender's pre-petition loans and the Precin Company should the Precin Company assert a lien interest. The DIP Lender believes it is entitled to a first priority if it loans funds to the Debtor. This is an issue, which will likely need to be adjudicated by the Court during the hearing on this Motion. Interim Financing Order

 g. <u>Relief from Stay:</u> Upon a Default or Event of Default, the automatic stay shall be deemed lifted to allow the DIP Lender to exercise any and all rights and remedies under the DIP Financing and the Interim Financing Order. Interim Financing Order,

 h. <u>Default.</u> Default provisions are ordinary and customary in debtor in possession financing do not relate to any pre-petition indebtedness. Interim Financing Order,

 i. <u>Other waivers.</u> There are no waivers or modifications with respect to exclusivity, filing, or timing of filing to file a plan of reorganization or disclosure statement, or to seek use of cash collateral or obtain future credit, provided, however, that certain actions may trigger the maturity of the DIP Financing. Interim Financing Order. The order is intended to be binding upon the DIP Lender, the Debtor, their successors, and any trustee appointed as a representative of the Debtor's estate. Interim Financing Order,

 j. <u>Indemnification and releases.</u> There are no provisions indemnifying any entity, nor are there any provisions releasing any claims of the estate against any persons or entities.

25. Additionally, under the DIP Financing, the maximum borrowing under the DIP Loan Documents is $200,000.00 at six percent (5%) interest with a termination date of June 30, 2010, or such other time as may be applicable under the Interim Financing Order.

26. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Code, then the court, after notice and a hearing, may authorize the debtors to obtain credit or incur debt:

(a) with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Code;

(b) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(c) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

27. Rule 4001(c) of the Bankruptcy Rules governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.[6]

FedR.Bankr.P. 4001(c)(2). Accordingly, the Court is authorized to grant the relief requested herein.

28. The terms and provisions of the DIP Financing have been negotiated at arms' length and in good faith. In addition, the terms and provisions of the DIP Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtors could obtain the needed post-petition financing.

29. Having determined that financing was available only under Section 364(c) and (d) of the Bankruptcy Code, the Debtor negotiated the DIP Financing pursuant to its business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Code, courts grant a debtor considerable defense in acting in accordance with its business judgment. See *Bray. v. Shenandoah Fed. Say. & Loan Ass'n*, 789 F.2d 1085, 1088 (4th Cir. 1986)(approving debtors-in-possession financing necessary to sustain seasonal business);

---

[6] Effective December 1, 2009, the referenced time period was changed from 15 days to 14 days.

see also *In re Ames Department Stores,* 115 B.R. 34, 40 (S.D.N.Y. 1990)("cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or their purpose is not so much to benefit the estate as it is to benefit parties in interest").[7]

30. The DIP Financing provides significant additional liquidity to the Debtor and thus will enable the Debtor, among other things, to (a) maintain the continuity of its operations, and (b) maximize the value of its businesses and assets. Such financing is the sole means of preserving and enhancing the Debtor's going concern value and retaining the possibility of reorganization or sale as a going concern.

31. Accordingly, the Debtor believes that the approval of the DIP Financing is in the best interests of its estate, its creditors and all parties-in-interest, and that the Court should therefore grant the Motion, approve the Interim Financing Order and authorize the Debtor to enter into the DIP Financing arrangement. Moreover, for the reasons hereinabove stated, the DIP Lender should be accorded the benefits inuring under Section 364 of the Code.

C. **NOTICE OF THE MOTION**

32. The Motion was filed on December 2, 2009. Notice of the Motion and Preliminary Hearing, and a copy of the Motion and a proposed form of the Interim Financing Order was served on (i) the United States Trustee for the Northern District of Illinois, (ii) the Debtor's twenty largest unsecured creditors (including the Precin Company) ; (iii) counsel to The

---

[7] Although the DIP lender is an "insider", separate counsel represents Lender, and the only apparent valid secured claims against the Debtor are those of Carol Rymsza (DIP Lender) and Rymsza Properties, LLC, both of which consent.

Precin Company ; and (iv) all other interested parties[8]. The Debtor believes that such notice is appropriate and adequate under the circumstances. Consequently, adequate notice and opportunity for a hearing has been given for the approval of the DIP Financing arrangement on a limited basis, pursuant with the provisions of Section 364 of the Bankruptcy Code, and Rules 2002, 4001 and 9014 of the Bankruptcy Rules, and any other applicable law, and no further notice relating to the entry of the Interim Financing Order is necessary or required.

**WHEREFORE**, the Debtor, HOME BUILDING SUPPLY, LLC, an Illinois limited liability company, respectfully requests that the Court authorize the DIP Financing on an interim basis, and enter the Interim Financing Order substantially in the form of the order attached hereto, and set a further hearing to consider the final approval of the DIP Financing and the entry of a Final Financing Order, and grant such other and further relief as is just and proper, consistent with the terms hereof.

> HOME BUILDING SUPPLY, LLC,
> An Illinois limited liability company,
>
> By:       /s/ Deborah K. Ebner
>           Its Attorney

Deborah K. Ebner (ARDC No. 61816159)
Law Office of Deborah K. Ebner
11 East Adams Street
Suite 904
Chicago, Illinois 60603
(312) 922-3838

---

[8] The Proposed Financing Order is circulated herewith but continues to be negotiated. A final version shall be presented at hearing.